FILED
2013 Mar-22  PM 06:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

| | | |
|---|---|---|
| BEVERLY LANE DEXTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 6:11-cv-04019-LSC |
| | ) | |
| AMEDISYS HOME HEALTH, INC. | ) | |
| OF ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**DEFENDANT AMEDISYS HOME HEALTH, INC. OF ALABAMA'S
MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

_____

# TABLE OF CONTENTS

I.   STATEMENT OF UNDISPUTED AND MATERIAL FACTS ...................... 1

II.  ARGUMENT ......................................................................... 12

    A. As a Matter of Law, Dexter Cannot Establish her Hostile Work
       Environment Claim ........................................................... 12

       1.  Dexter cannot demonstrate the alleged conduct was sufficiently
           severe or pervasive to alter her working conditions ............................ 13

       2.  Dexter has failed to show by substantial evidence the alleged
           harassment was based upon her age ........................................ 14

       3.  Amedisys' *Faragher* defense defeats Dexter's hostile work
           environment claim ................................................................... 15

    B. Dexter Cannot Establish a Claim for Discrimination or Retaliation
       under the ADEA as She Suffered No Adverse Employment Action ........ 17

       1.  Dexter suffered no adverse employment action.................................... 18

       2.  Dexter was not constructively discharged .............................................. 20

    C. Dexter Cannot Establish Her Claim for Age Discrimination as
       She Admits Her Age Was not the But For Reason for any Alleged
       Adverse Action ................................................................................... 23

    D. Dexter Cannot Establish Her Claim for ADEA Retaliation as She
       Did Not Engage in Protected Conduct ...................................................... 25

    E. Dexter Fails to Present Substantial Evidence to Show Amedisys'
       Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for
       Any Alleged Adverse Action Are a Pretext .................................................. 27

       1.  Amedisys has legitimate, non-discriminatory and non-retaliatory
           reasons for the purported adverse actions .............................................. 27

2. The undisputed facts raise the inference that age was not a factor in any alleged adverse action.................................................... 28

3. Dexter fails to present substantial evidence Amedisys' legitimate reasons are not worthy of belief ........................................... 29

III.   CONCLUSION ........................................................................ 30

CERTIFICATE OF SERVICE.............................................................. 31

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

| | | |
|---|---|---|
| BEVERLY LANE DEXTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 6:11-cv-04019-LSC |
| | ) | |
| AMEDISYS HOME HEALTH, INC. | ) | |
| OF ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT AMEDISYS HOME HEALTH, INC. OF ALABAMA'S**
**MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to <u>Federal Rules of Civil Procedure</u>, Rule 56, Defendant Amedisys Home Health, Inc., of Alabama ("Amedisys") respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment as to all of Plaintiff Beverly Dexter's ("Dexter") claims.

**I.     STATEMENT OF UNDISPUTED AND MATERIAL FACTS.**

1.     Amedisys' home health and hospice agencies deliver home health care and rehabilitation services to patients.     (Traci Ferguson Declaration ("Ferguson Decl.") at ¶ 3, filed as Exhibit C).

2.     Dexter worked at the Amedisys branch in Fayette, Alabama. (Deposition of Beverly Dexter ("Dexter Depo.") at pp. 27:22-32:11, filed as Exh. A).

3. Traci Ferguson ("Ferguson") is employed as the Director of Operations ("DOO") for the Amedisys facility in Fayette, Alabama. (Depo. of Traci Ferguson ("Ferguson Depo.") at pp. 8:4-9:5, filed as Exh. B).

4. During Dexter's employment, the Fayette office also had Rehabilitation Specialty Director, Jeff Boyles ("Boyles"), who was responsible for the PTs and LPTAs. (*Id.*)

5. In January of 2009, Dexter interviewed with Ferguson and Boyles for an LPTA position. (Dexter Depo. at pp. 27:22-32:11).

6. Ferguson and Boyles offered Dexter a job the same day of her interview. Dexter started her employment the next month. (Dexter Depo. at pp. 27:22-32:11; 272:12-14).

7. At the time Dexter was hired, she was forty-three (43) years of age. (Dexter Depo. at pp. 27:22-32:11; 272:21-273:2).

8. On February 27, 2009, Dexter confirmed her ability to access the Employee Handbook which contains Amedisys' anti-discrimination and anti-harassment policies. (Dexter Depo. at pp. 146:1-148:7).

9. Dexter also received training on these policies when she began her employment. (Dexter Depo. at pp. 328:10-329:19).

10. The Amedisys attendance policy provides that three tardies in a quarter is excessive and is grounds for disciplinary action. (Exhs. I and J to Ferguson Decl.; Ferguson Decl. at ¶ 21).

11.     LPTAs are expected to be at the office or seeing patients from 8:00 a.m. to 5:00 p.m., and a LPTA who calls in to say they will be substantially late starting their day is considered tardy.  (Ferguson Depo. at p. 64:9-18).

12.     As an LPTA, Dexter provided therapy to patients in their homes under the direction of a physical therapist. (Dexter Depo. at pp. 31:16-35:1).

13.     To create her weekly patient schedule, Dexter first received a calendar referred to as the "week at a glance" on Wednesday from the Business Office Scheduler ("BOS"). (Dexter Depo. at pp. 36:11-43:23; 296:15-298:18).

14.     The "week at a glance" included all of the patients names and a tentative schedule. (*Id*.).

15.     Dexter then rearranged the patient visits to the dates and times of her choosing and returned the revised schedule to the BOS on or before Friday each week. (Dexter Depo. at pp. 36:11-43:23; 296:15-298:18).

16.     When Dexter began her employment, the BOS was Darlene Pinion ("Pinion"), and in late 2010 or the early part of 2011, Amy Moye ("Moye") became the BOS. (Dexter Depo. at pp. 36:11-43:23).

17.     When Moye became the BOS, she advised the LPTAs that she would not make any unnecessary changes to their patient schedules after they made their initial revisions. (Dexter Depo. at pp. 36:11-43:23).

18.     Dexter understood she was required to spend at least thirty (30) minutes with a patient per visit. (Dexter Depo. at pp. 44:12-45:19).

3

19.     In late 2010, Ferguson instructed Dexter and the other LPTAs that they should spend at least forty-five (45) minutes with a patient. (Dexter Depo. at pp. 44:12-45:19).

20.     Dexter was required to submit notes documenting the therapy she had performed with each patient by 10:00 a.m. on the morning following the visit. (Dexter Depo. at pp. 49:1-51:5).

21.     LPTAs are paid a 15% premium for weekend visits to patients. (Ferguson Decl. at ¶ 23).

22.     To keep costs under control and because patients typically do not like them, weekend visits are discouraged. (Ferguson Decl. at ¶ 23).

23.     Sometime in late 2010 or early 2011, Boyles counseled Dexter to reduce the number of Saturday visits. (Dexter Depo. at pp. 184:21-185:14).

24.     Effective February 1, 2011, Amedisys adopted a "Zero Missed Visit" policy which required the agencies to ensure visits were not missed and that missed visits were properly documented and made up the same week. (Ferguson Decl. at ¶ 9; Exh. A to Ferguson Decl.).

25.     Pursuant to this policy, Ferguson placed a renewed emphasis on patients being seen when scheduled. (Ferguson Decl. at ¶ 9).

26.     Patient visits were to be moved only when needed, preferably for patient needs.  (Deposition of Jeffrey Boyles ("Boyles Depo.") at p. 24:16-19, filed as Exh. D).

4

27.   Since the beginning of her employment, Dexter frequently rescheduled her patient visits. (Dexter Depo. at pp. 78:18-79:2; Ferguson Decl. at ¶ 8; Boyles Depo. at pp. 63:4-64:18).

28.   Even after the adoption of the No Missed Visits policy, Dexter frequently rescheduled visits; between April 14, 2011 and April 22, 2011, Dexter rescheduled approximately 20 visits.  (Dexter Depo. at pp. 255:8-258:8; 259:9-261:1; 261:5-263:6; 263:13-267:7; 267:14-269:15).

29.   Dexter moved eight visits to Saturday, April 23, 2011. (Dexter Depo. at pp. 267:14-269:15).

30.   Consequences of moving patients visits are that an LPTA may visit the patient on back-to-back days and commit other frequency errors, such as seeing patient on a consecutive day that the PT is scheduled to see the patient. (Exh. Q to Ferguson Decl. at ¶ 16; Boyles Depo. at pp. 45:1-13; 71:12-72:3).

31.   On April 25, 2011, Boyles issued a counseling form to Dexter for seeing two patients in the prior week at the wrong frequency. (Exh. 17 to Dexter Depo.).

32.   Pursuant to the patients' treatment plan, Dexter was only supposed to see these two patients two times per week, but had made three visits instead. (*Id*.; Dexter Depo. at pp. 183:6-185:4; Ferguson Decl. at ¶¶ 16-17).

33.   Boyles counseled Dexter that she was responsible for obtaining her schedule and that she should verify the frequency with the physical therapist.

(Dexter Depo. at pp. 185:13- 187:8; Exh. 17 to Dexter Depo.; Ferguson Decl. at ¶¶ 16-17).

34.    Dexter agreed "100 %" with the April 25, 2011, counseling. (Dexter Depo. at pp. 183:6 -185:4; Exh. 17 to Dexter Depo.).

35.    Moye and Pinion complained to Ferguson that Dexter behaved toward them in a hostile and confrontational manner when they were resistant to moving Dexter's patient visits. (Ferguson Depo. at pp. 78:11-82:10).

36.    On April 27, 2011, Boyles issued a counseling form to Dexter for her interactions with the office staff.  (Exh. 18 to Dexter Depo.).

37.    Boyles counseled Dexter to keep her frustration level with the office staff in check and to work on her perception of comments made by the office staff. (*Id.*; Dexter Depo. at pp. 190:17-193:11; Ferguson Depo. at ¶18).

38.    After this counseling, Dexter continued to reschedule patient visits; according to Dexter's daily activity sheets, patients were moved on the following days: (a) one patient was moved on May 7, 2011; (b) four patients were moved on May 9, 2011; (c) three patients were moved on May 10, 2011; (d) five patients were moved on May 16, 2011; (e) three patients were moved on May 17, 2011; (f) one patients was moved on May 18, 2011; (g) two patients were moved on May 19, 2011; (h) two patients were moved on May 20, 2011; (i) three patients were moved on May 23, 2011.  (Ferguson Decl. at ¶ 27).

39.    Dexter also continued to schedule a weekend visits as follows: (a)

eight patients on Saturday, April 30, 2011; (b) three patients on Sunday, May 1, 2011; (c) three patients on Sunday May 8, 2011; (d) one patient on Saturday, May 21, 2011; and (e) two patients on Sunday, May 22, 2011.  (Ferguson Decl. at ¶ 24).

40.   On May 18, 2011, Boyles counseled Dexter about moving four patients.  (*Id.* at ¶ 19 and Exh. G to Ferguson Decl.)

41.   Dexter was instructed to turn in all paperwork for her missed visits before taking time off on May 12 and 13, 2011. (Ferguson Decl. at ¶ 30).

42.   As of May 12, 2011, Ferguson had not received Dexter's missed visit notes, but Dexter took those days off.  (*Id.*).

43.   On May 23, 2011, Ferguson met with Dexter regarding Dexter's rescheduling of patient visits. (Ferguson Decl. at ¶¶ 31-32).

44.   Ferguson provided Dexter a written warning for continuing to move patients, accruing an unplanned absence and three tardies, and failing to turn in her missed visit notes by the requested date. (Exh. 19 to Dexter Depo.; Ferguson Decl. at ¶¶ 31-32).

45.   Dexter agrees she continued to move patients and scheduled weekend visits. (Dexter Depo. at p. 200:7-19).

46.   Ferguson provided Dexter with an action plan for improvement which included the following:  (1) no tardies or calling off from work during the second quarter; (2) turning in all required paperwork by the deadline; (3) no more excessive rescheduling of patient visits; (4) limiting Dexter's visits to seven per day

7

at forty-five minutes per visit; and (5) no weekend visits without Ferguson's approval. (Exh. 19 to Dexter Depo.).

47.    Although the number of Dexter's daily visits was capped at seven per day, her total number of weekly visits did not decrease; according to the Agent's Patient Logs, Dexter averaged visiting approximately 27.4 patients per week from April 24, 2011, to May 28, 2011. (Exh. K to Ferguson Decl.; Ferguson Decl. at ¶ 34).

48.    The number of patients visited each week up until May 28, 2011, was as follows: (a) week of 4/24: 31 visits; (b) week of 5/1: 25 visits; (c) week of 5/8: 22 visits; (d) week of 5/15: 25 visits; and (e) week of 5/22: 34 visits. (*Id.*)

49.    In the last five weeks of Beverly Dexter's employment, she never reached an average of seven visits per day. (Ferguson Decl. at ¶ 35).

50.    Despite the May 23, 2011, warning, Dexter continued to move patient visits. (Ferguson Decl. at ¶ 27).

51.    According to Dexter's daily activity sheets, patients were moved on the following days: (a) one patient was moved on May 24, 2011; (b) two patients were moved on May 25, 2011; (c) three patients were moved on May 26, 2011; (d) two patients were moved on May 27, 2011. (*Id.*).

52.    On May 27, 2011, Ferguson issued Dexter another written warning. (Exh. 20 to Dexter Depo.).

53.    That warning was issued because Dexter failed to use the agency

assigned weights with a patient, failed to document properly patient care, and continued to move patients. (Exh. 20 to Dexter Depo.; Ferguson Decl. at ¶ 37, 40).

54.     After the May 23, 2011, counseling, Boyles had informed Ferguson that Dexter had not been using weights with a patient when the standard of care would have called for the weights to be used. Boyles discovered this when he was doing his assessment. (Ferguson Decl. at ¶ 36; Boyles Depo. at pp. 80:9-81:14).

55.     The patient's medical records also reflected that Dexter was not using weights with the patient.  (Exh. R to Ferguson Decl.; Ferguson Decl. at ¶ 38).

56.     Boyles and Ferguson called Dexter to discuss this situation, and Dexter confirmed on the telephone call that she did not use the weights with this individual. (Ferguson Decl. at ¶ 37).

57.     Dexter admitted she gave her weights to a patient who moved out of the state. (Dexter Depo. at pp. 207:21-209:7).

58.     Dexter did not inform anyone at Amedisys that she did not have her assigned weights. (*Id*.)

59.     In the conversation, Dexter stated that her documentation is not always reflective of the care she provided to her patients. (Dexter Depo. at pp. 209:8-211:4; Ferguson Decl. at ¶ 37; Boyles Depo. at pp. 80:9-81:14).

60.     Ferguson considered Dexter's failure to use the weights and to document properly her care to be a serious issue and violations of Amedisys' procedures. (Ferguson Decl. at ¶ 37).

9

61.    On or about the same day Dexter received the second written warning, Dexter submitted a letter of resignation dated May 27, 2011.  (Dexter Resignation Letter, Exh. 21 to Dexter Depo.).

62.    At the time Dexter resigned, she was forty-five (45) years old. (Dexter Depo. at pp. 27:22-32:11; 272:21-273:2).

63.    During Dexter's employment, the Fayette branch employed three LPTAs: Dexter, Raina Elkins ("Elkins") and Anita Janette Robinson ("Robinson"). (Boyles Depo. at p. 18:6-9).

64.    Robinson is only two years younger than Dexter. (Dexter Depo.at pp. 87:1-20; Ferguson Decl. at ¶ 7).

65.    Elkins is between five and six years younger than Dexter. (Ferguson Decl. at ¶ 7).

66.    At the time Dexter resigned, Robinson was 43 years old, and Elkins was 40 years old.  (*Id.*).

67.    From April 24, 2011, to May 28, 2011, Dexter saw seventeen patients on Saturdays and Sundays.  (Ferguson Decl. at ¶ 25.)

68.    The other two LPTAs saw no patients on Saturday or Sunday according to the Agent's Patient Logs. (Ferguson Decl. at ¶ 25).

69.    According to the LPTA Missed Visit Reports, Dexter had 88 missed visits, and her missed visit rate was 13.4%, approximately four times the missed visit rate of the other two LPTAs, Anita Robinson - 18 missed visits (3.4%) and

Raina Elkins - 20 missed visits (3.2%). (Exhs. M, N, and O to Ferguson Decl.; Ferguson Decl. at ¶ 29).

70.     Boyles observed Dexter was tardy often during her employment in the sense that she would call in to the office with a personal issue that would prevent her from seeing patients as scheduled. (Boyles Depo. at pp. 676:24-67:7; 72:4-8; Ferguson Depo. at pp. 72:19-73:2).

71.     To Ferguson's and Boyles' knowledge, Elkins and Robinson never had three tardies in a quarter or failed to turn in required paperwork as requested before being off from work. (Ferguson Decl. at ¶ 33; Boyles Depo. at pp. 66:12-67:7).

72.     Boyles had "many more" conversations with Dexter regarding her performance than with either Elkins or Robinson. (Boyles Depo. at pp. 63:4-64:18).

73.     Boyles observed that Dexter had missed visits "just about every week," but Elkins and Robinson had missed visits "very infrequently." (*Id.*)

74.     Boyles observed Dexter often failed to call the scheduler to report her visits; whereas, Elkins and Robinson rarely failed to call the scheduler. (Boyles Depo. at pp. 68:5-70:21).

75.     Ferguson is not aware of any similar instance where Elkins or Robinson had failed to provide the care prescribed for a patient or instances where the other two LPTAs have not properly documented the care they provided. (Ferguson Decl. at ¶ 33).

76.     Dexter does not know how often+ Elkins or Robinson made changes to their schedule after they submitted it to the BOS each Friday. (Dexter Depo. at pp. 61:14-66:6).

77.     Dexter does not know if she moved more visits than Elkins or Robinson. (Dexter Depo. at pp. 61:14-66:6).

## II.     ARGUMENT.

### A.     As a Matter of Law, Dexter Cannot Establish her Hostile Work Environment Claim.

Amedisys maintains the ADEA does not provide for hostile work environment claims. The Eleventh Circuit has not directly discussed whether hostile work environment is cognizable under the ADEA. *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1249 n.7 (11th Cir. 1997) ("Neither party questions, hence we do not actually decide, whether the hostile environment doctrine developed in Title VII actions applies in an ADEA action, a question so far decided specifically by only one circuit court of appeals, the Sixth."). However, other courts have refused to recognize a ADEA claim for hostile work environment claim. *See Billingsley v. Centaur Bldg. Servs., Southeast*, 2012 U.S. Dist. LEXIS 164155 at *12 (M.D. Ala. Sept. 6, 2012) (noting the split among the First, Fifth and Sixth Circuits). In addition, Amedisys renews its argument that Dexter's hostile work environment claim is barred by her failure to exhaust her administrative remedies. Specifically, Dexter did not assert a claim for hostile work environment in her EEOC Charge or allege any of the facts on which

she now bases that claim.  (Exh. 47 to Dexter Depo.).  *Ramon v. AT&T Broadband*, 195 Fed. Appx. 860, 866 (11th Cir. 2006) (affirming dismissal of plaintiff's hostile work environment claim for failure to exhaust administrative remedies as there was no allegation in her EEOC charge pointing to "the kind of pervasive and oppressive conditions that would allow us to conclude that she intended to have the EEOC investigate the workplace for hostile work environment.").   Moreover, Dexter cannot satisfy the elements of a hostile work environment claim.

### 1. Dexter cannot demonstrate the alleged conduct was sufficiently severe or pervasive to alter her working conditions.

In hostile work environment cases, "an employer's harassing actions toward an employee do not constitute employment discrimination under [the ADEA] unless the conduct is 'sufficiently severe or pervasive' to alter the conditions of [the victim's] employment and create an abusive working environment."  *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245-46 (11th Cir. 1999) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). The United States Supreme Court identified four factors a court is to consider in determining whether harassment objectively altered an employee's terms and conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993) ". …[S]imple teasing, offhand comments, and isolated incidents (unless extremely

serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Dexter admits neither Ferguson nor Boyles made any age-related comments to her. (Dexter Depo. at pp. 94:9-96:15). Rather, Dexter contends she was harassed by the following actions: (1) frequent work-related phone calls she receive from the clinical manager and Boyles; (2) changing the supervisor to whom she was required to provide her daily patient report;[1] (3) being asked to meet with Ferguson; (4) and Moye's comment to Dexter on two (2) occasions that "I can teach an old dog new tricks."[2] (Dexter Depo. at pp. 103:15-111:2; 132:11-140:6).[3] Dexter does not allege anyone physically harmed her. (*Id.*). Dexter sometimes cried when she was instructed to meet with Ferguson, but was able to perform her duties when providing therapy to patients. (*Id.*). These common workplace trivialities and stray, ambiguous remarks are insufficient to demonstrate the harassing conduct was severe or pervasive. In addition, the alleged conduct did not unreasonably interfere with Dexter's job performance. Thus, Dexter's hostile work environment claim fails as a matter of law.

   **2.    Dexter has failed to show by substantial evidence the alleged harassment was based upon her age.**

---

[1] Dexter testified this involved her calling Boyles about her schedule, being unable to reach him, and instead talking to someone else.  (Dexter Depo. at pp. 205:1-206:1).

[3] Dexter also alleges Ferguson and Moye made comments about "new blood" in the office when discussing new patients and employees. (Dexter Depo. at pp. 73:2-76:18).  Dexter was unaware of any comments that Moye or Ferguson made to indicate that "new blood" was a reference to age as opposed to new employees. (*Id.*).

No evidence exists the complained-of conduct was based upon Dexter's age. To establish a prima facie case for hostile work environment under the ADEA, the harassment must be based upon the employee's age. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Specifically, Dexter must show that "but for" the fact of her age, she would not have been the object of harassment. *See Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) (holding, in a sex harassment case, "the statements and conduct must be of a sexual or gender-related nature . . . before they are considered in determining whether the severe or pervasive requirement is met."). Dexter can make no such showing.

Dexter has no evidence any of the complained-of conduct was due to her age. Dexter attributes the purported harassment to her age merely because she "had trouble keeping up with [the changes]." (Dexter Depo. at p. 109:12-23). However, Dexter admits that much of the alleged conduct was simply because she did not "suck up to" or play favorites with Ferguson. (Dexter Depo. at pp. 98:4-99:5; 101:1-18). As such, Dexter cannot demonstrate any of the alleged harassment was solely because of her age and thus summary judgment is due be granted as to that claim.

### 3. Amedisys' *Faragher* defense defeats Dexter's hostile work environment claim.

To successfully assert the *Faragher* defense, Amedisys must satisfy two elements: "(a) that [Amedisys] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that [Dexter] unreasonably

15

failed to take advantage of any preventative or corrective opportunities provided by [Amedisys] or to avoid harm otherwise." *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1296-97 (11th Cir. 2000). It is undisputed Amedisys has a policy that prohibits age discrimination. (Dexter Depo. at pp. 328:10-329:19). Dexter acknowledged her access to the employee handbook which contained the policy and also received a copy of the handbook. (Dexter Depo. at pp. 146:1-148:7). Amedisys also provided Dexter with anti-harassment and anti-discrimination training. (*Id*. at pp. 328:10-329:19). Dexter knew the procedure to complain about harassment and discrimination. (Dexter Depo. at p. 244:5-245:11). Thus, Amedisys took reasonable steps to prevent harassment.

The Eleventh Circuit Court of Appeals has held *Faragher* and *Ellerth* decisions "place obligations and duties not only on the employer but also on the employee." *Baldwin v. BlueCross/Blue Shield*, 480 F.3d 1287, 1306 (11th Cir. 2005). When the employee fails to promptly report harassment to the employer, the employee "lose[s] the opportunity to successfully prosecute a [discrimination] claim based on the harassment." *Id.* at 1307. Moreover, vague complaints regarding harassing conduct not based upon a protected class will not satisfy the employee's duty. *See Madray*, 208 F.3d at 1300-01; *see also Nurse "Be" v. Columbia Palms W. Hosp. L.P.*, 490 F.3d 1302, 1309-10 (11th Cir. 2007)(holding vague complaints about "harassing" behavior fail to put employer on notice).

Despite her knowledge of Amedisys' anti-harassment policy, Dexter did not

16

complain about any alleged age discrimination until after she submitted her resignation. (Dexter Depo. at pp. 243:2-245:13). Although Dexter alleges she left several voice mail messages with the Amedisys human resource director and Area Vice-President, she does not know whether she talked to anyone before she submitted her resignation letter. (Dexter 218:17-219:20).  Nevertheless, in her first written complaint to the Amedisys' human resources director on May 25, 2011, Dexter did not mention any discrimination or harassment based upon her age. (Dexter Depo. at pp. 243:2-245:13; May 25, 2011, Letter to Frank Redmond, Exh. 32 to Dexter Depo.).  In sum, Dexter unreasonably failed to take advantage of Amedisys' preventative measures, and thus her hostile work environment claim is barred as a matter of law by the *Faragher* defense.

> **B.    Dexter Cannot Establish a Claim for Discrimination or Retaliation under the ADEA as She Suffered No Adverse Employment Action.**

To analyze ADEA discrimination claims, the Eleventh Circuit  utilizes the *McDonnell Douglas* framework which requires that an employee's prima facie case of age discrimination must demonstrate she was subject to an adverse employment action.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).  To establish a prima facie case for ADEA retaliation, Dexter must also show she suffered an adverse employment action. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir. 2001). Because an adverse employment action is an "indispensable element" of a her claims, Dexter's failure to "present sufficient

evidence for a reasonable jury to find that this element was met is fatal to [her] case." *Smith v. Ala.*, 252 F. Supp.  2d 252 F. Supp. 2d 1317, 1333 (M.D. Al. 2003) (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).

### 1.   Dexter suffered no adverse employment action.

For purposes of an ADEA discrimination claim, the Eleventh Circuit Court of Appeals has held that "[a]n adverse employment action is 'a serious and material change in the terms, conditions, or privileges of employment.'" *Summers v. Winter*, 303 Fed. Appx. 716, 718 (11th Cir. 2008) (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)). To constitute a violation, "the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way" when "viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239. *Summers*, 303 Fed. Appx. at 718 (requiring more rigorous training was not an adverse employment action for purposes of ADEA claim). As such, for an employment action to be materially adverse, it must be more than an "inconvenience or a change in job responsibilities." *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (recognizing that letters of warning do not constitute adverse employment action under the ADEA). "[C]riticisms of an employee's job performance-written or oral-that do not lead to tangible job consequences will rarely form a permissible predicate for a [discrimination] suit." *Davis,* 245 F.3d at 1241.

The same is true for Dexter's retaliation claim under the ADEA. The United

States Supreme Court has held an adverse employment action is one that "a reasonable employee would have found … [was] materially adverse…." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The United States Supreme Court cautioned the anti-retaliation provision "protects an individual <u>not</u> from all retaliation, but from retaliation that produces an <u>injury or harm</u>." *Id.* at 67 (emphasis added). Even under the *Burlington* standard, a mere warning which has no effect on the plaintiff's employment is not a materially adverse action. *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 Fed. Appx. 437, 442 (5th Cir. 2007)(holding written warning was not a materially adverse employment action under *Burlington*); *see also DaCosta v. Birmingham Water Works & Sewer Bd.*, 256 Fed. Appx. 283, 287-88 (11th Cir. 2007) (holding loss of prestige, requirement that employee bring in a doctor's note, lower employment evaluations which did not lead to a more tangible action, and, a pattern of abusive comments were not adverse actions for purposes of retaliation claim).

Dexter has not suffered an adverse action for purposes of her discrimination or retaliation claims. Although Dexter received two written warnings, mere warnings do not rise to the level of an adverse employment action for purposes of a discrimination or retaliation claim. As noted *supra*, the limitation on Dexter's patient visits did not adversely affect her employment as she did not exceed seven visits per day on average before Ferguson instituted the cap. (Ferguson Decl. at ¶¶ 34-35). The remaining conduct of which Dexter complains, including favoritism,

less flexibility and changes to her reporting requirements, is also insufficient to rise to the level of an adverse employment action.  (Dexter Depo. at pp. 99:6-111:3).

The absence of an adverse employment action is fatal to Dexter's discrimination and retaliation. Summary judgment is warranted on this basis alone.

## 2.    Dexter was not constructively discharged.

"The threshold for establishing constructive discharge in violation of ADEA is quite high." *Hipp v. Liberty Nat'l Life Ins. Co*., 252 F.3d 1208, 1231 (11th Cir. 2001). In fact, "[t]he standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Hipp*, 252 F.3d at 1231. "A claim for constructive discharge requires the employee to demonstrate that the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Riviera Beach Assocs*., 30 F.3d 1350, 1363 (11th Cir. 1994); *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009). In addition, an ADEA-plaintiff must demonstrate the unbearable conditions were because of her age. *Rowell v. BellSouth Corp*., 433 F.3d 794, 805 (11th Cir. 2005)(holding the constructive discharge must arise from the employer's desire to purge the employee from its ranks because of age); *See Sauvage v. Snow*, 413 F. Supp. 2d 1289, 1305 (M.D. Fla. 2005) ("Liability for a constructive discharge obviously depends upon a showing of intentional discrimination.").

"In assessing constructive discharge claims, [courts] do not consider a

20

plaintiff's subjective feelings about his employer's actions. Rather, [courts] determine whether 'a reasonable person in [the plaintiff's] position would be compelled to resign.'" *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998) (quoting *Steele v. Offshore Shipbuilding, Inc*., 867 F.2d 1311, 1317 (11th Cir. 1989)). A reasonable employee is one who does not "assume the worst" or "jump to conclusions too fast." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987). Because courts require job conditions to be worse than those which a reasonable person could tolerate, "[a]n employee may not . . . be unreasonably sensitive to a change in job responsibilities." *Serrano-Cruz v. DFI P.R., Inc*., 109 F.3d 23, 26 (1st Cir. 1997). As such, a change in job duties, reprimands, or a slight decrease in pay will not amount to a constructive discharge. *Hill v. Winn-Dixie Stores, Inc*., 934 F.2d 1518, 1527 (11th Cir. 1991)(finding that a written reprimand, coupled with criticism by supervisors and the withdrawal of customary support, were insufficient to establish constructive discharge)*; Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001) ("Repeatedly receiving poor evaluations would be unpleasant for anyone, but it does not rise  to the level of such intolerable conditions that no reasonable person would remain on the job."); *McCann v. Litton Sys., Inc.*, 986 F.2d 946, 952 (5th Cir. 1993) (refusing to find a constructive discharge when the plaintiff "faced a slight decrease in pay coupled with a loss of some supervisory responsibilities").

An example of a valid constructive discharge claim is one in which the

employee is "stripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers…." *Poole v. Country Club of Columbus, Inc*., 129 F.3d 551, 553 (11th Cir. 1997). However, a demotion to a position with a decreased salary and fewer benefits does "not make the working environment so intolerable as to force a resignation." *Hellums v. Webster Indust*., Inc.,  97 F. Supp. 2d 1287, 1297 (M.D. Ala. 2000)(request for employee take lower paying job was insufficient to support ADEA constructive discharge claim).

It is undisputed no one at Amedisys told Dexter that she was going to be fired. (Dexter Depo. at pp. 99:6-111:3). Rather, Dexter submitted a letter of resignation. (*Id*.; Exh. 21 to Dexter Depo.).  Dexter contends the following conduct "forced" her to resign:  (1) "being singled out" for "not playing the favoritism games in the office"; (2) limiting her patient visits to seven per day; (3) limiting her flexibility in rescheduling patient visits; (4) over-scrutinizing her patient schedules; (5) changing the supervisor to whom Dexter made her daily reports; (6) receiving phone calls from Boyles or Teresa Ergle about scheduling issues and office meetings; (7) everybody "walking on egg shells" and "tension in the air;" and (8) Ferguson pressuring Boyles to write her up when he was reluctant to do so. (Dexter Depo. at pp. 99:6-111:3).  As demonstrated previously in this action, Dexter has no evidence any of this alleged conduct was "because of" her age.

 In addition, Dexter's complaints regarding office favoritism, reprimands, decreased flexibility, and changes in reporting requirements are petty annoyances

22

which are common in any work setting. Although Dexter contends the limitation placed on her number of patient visits was an attempt by Amedisys to "starve" her out, the undisputed facts demonstrate this limitation had no adverse effect on Dexter's income. In the five weeks before Ferguson formally limited Dexter's visits to seven per day, Dexter never made more than seven visits per day on average in one week. (Ferguson Decl. at ¶¶ 34-35). The most visits Dexter had in a week during that time period was thirty-four. However, most weeks Dexter made fewer than thirty visits. (*Id.*) Even if the limitation caused a slight decrease in Dexter's income, which it did not, federal law is clear that a slight decrease in pay fails to amount to a constructive discharge.

The conduct Dexter complains of fails to meet the high standard for constructive discharge. Without a constructive discharge, no adverse action exists upon which Dexter can base her claims for ADEA discrimination and retaliation. Thus, Amedisys is entitled to summary judgment as to all of Dexter's claims.

### C.   Dexter Cannot Establish Her Claim for Age Discrimination as She Admits Her Age Was not the But For Reason for any Alleged Adverse Action.

Pursuant to the United States Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc*., Dexter bears the burden of establishing that her age was the "but for" reason she was terminated. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). "The burden of persuasion does not shift to the [Amedisys] to show that it would have taken the action regardless of age, even when [Dexter] has produced

some evidence that age was one motivating factor in the a decision." *Id*.  In addition, the Supreme Court ruled out the idea of a 'mixed motive' ADEA claim, instead requiring plaintiffs to show that age was the 'but for' cause of an employment action." *Mora v. Jackson Mem. Found. Inc*., 597 F.3d 1201, 1203-04 (11th Cir. 2010); *McFadden v. Krause*, 357 Fed. Appx. 17, 19 (9th Cir. 2009).

As age must be the "but for" cause, an employee may not also contend his termination was based on some other criteria. *See Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, 1271 (N.D. Ala. 2009); *see also McFadden*, 357 Fed. Appx. at 19 (granting summary judgment in favor of employer as, pursuant to *Gross*,  "[t]here is  no basis for recognizing a combined age/sex discrimination claim, as a different analytical framework applies to each statute."). As such, when an employee testifies that the alleged adverse action was motivated by a reason other than his or her age, the employee cannot meet the ADEA's "but-for" standard. *See Onfuye v. JP Morgan Chase*, 2012 U.S. Dist. LEXIS 14338 at *27 (N.D. Ill. Feb. 7, 2012); *Deyo v. St. Luke's Hosp*., 2008 U.S. Dist. LEXIS 73501 at *9 (E.D. Penn. Sept. 24, 2008) (granting summary judgment in favor of employer in ADEA case where employee testified that his termination was because of his whistleblower activity). For example, in *Onfuye*, the employee testified that his age, race and national origin all played a role in the termination decision, but that he believed his race was the primary factor. *Onfuye*, 2012 U.S. Dist. LEXIS 14338 at *27. The district court granted summary judgment in favor of the employer on

24

the ADEA claim as the employee "appear[ed] to agree that his age was not the determining factor in [the] decision not to employ him. *Id.*

Similar to employee in *Onfuye*, Dexter admits factors other than her age motivated the alleged adverse actions.  Dexter testified that she felt like she was "pushed out of her position" because she failed to "stay in the good graces" of Ferguson. (Dexter Depo. at pp. 98:4-99:5). Dexter testified she was singled out because she did pay  "favoritism games" or "suck up to" Ferguson. (Dexter Depo. at p. 101:1-18). Dexter testified her resignation was caused in part to the "tension in the air" at the office, and that the tension was because of "something else" than her age. (Dexter Depo. at pp. 108:14-109:5). Dexter also testified that she received the written warnings because of her age, sex and in retaliation for complaining about the mileage reimbursement rate and the decrease in the 401(k) match contribution. (Dexter Depo. at pp. 112:6-114:22; 213:10-14).

Dexter's age discrimination claim is so implausible that she has failed to convince even herself that her age was the but-for reason for any alleged adverse action.  Importantly, Dexter admits that much of complained-of conduct is attributable to office politics - not her age. As Dexter agrees her age was not the "but for" factor for any alleged adverse action, her discrimination claim must fail.

### D.   Dexter Cannot Establish Her Claim for ADEA Retaliation as She Did Not Engage in Protected Conduct.

As demonstrated previously, Dexter was not subjected to any adverse employment actions.  For that reason alone, Dexter's retaliation claim should fail.

Moreover, for retaliation to be actionable under the ADEA, the complaints which lead to the alleged retaliation must relate to conduct protected under the statute. 29 U.S.C. § 623(d); *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir. 2001). Thus, Dexter must show that she opposed conduct, or participated in an inquiry involving conduct, that constituted age discrimination.  29 U.S.C. § 623(d); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997) (Title VII retaliation claim failed as employee did not oppose a practice prohibited by the statute).  Generalized complaints about unfair treatment do not constitute the requisite protected conduct necessary for a prima facie case of ADEA retaliation. *See Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995) (holding employee's letter to human resources complaining about unfair treatment was not ADEA-protected conduct as it did not mention age discrimination); *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012).  For example, in *Smith*, the employee complained about the formula used to calculate a contribution to her pension plan, cutbacks to her branch staff, and issues with her 401(k) contributions. *Smith*, 674 F.3d at 658. In affirming summary judgment in favor of the employer, the Seventh Circuit held the employee's "[g]eneral complaints, … [did] not constitute protected activity under the ADEA because they [did] not include objections to discrimination based on her age." *Id.*

Dexter's retaliation claim is premised upon the following: (1) she questioned how Amedisys could purchase new hospices, but not give a 401(k) match; and (2)

complained "that gas was going up and [the employees'] mileage reimbursement wasn't going up." (Dexter Depo. at pp. 113:3-114:22; 120:6-130:10). Dexter admits when she made these complaints she did not reference age discrimination or contend that the changes disproportionately impacted older workers. (Dexter Depo. at pp. 120:6-130:10). In fact, Dexter <u>admits</u> the mileage reimbursement rate had nothing to do with age. (Dexter Depo. at pp. 120:6-130:10).

Although Dexter believes the 401(k) match decrease had more of a negative effect on older workers, she has no statistical analysis to prove this theory and has no evidence that Amedisys changed the 401(k) plan to harm older workers. (Dexter Depo. at pp. 120:6-130:10; 144:9-145:21). Dexter's belief is premised upon the supposition that older workers have larger 401(k) accounts than younger workers. However, it is common knowledge an employer's matching contribution is not based upon how much an employee has invested in a 401(k) account, but upon how much the employee contributes - which is an age-neutral factor.

Like the employee in *Smith*, Dexter only made general complaints about common-place work issues. She did not object to discrimination based upon age. Thus, Dexter's retaliation claim fails as a matter of law.

**E.   Dexter Fails to Present Substantial Evidence to Show Amedisys' Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for Any Alleged Adverse Action Are a Pretext.**

**1.   Amedisys has legitimate, non-discriminatory and non-retaliatory reasons for the purported adverse actions.**

The burden to articulate a non-discriminatory reason "is a burden of

27

production, not of persuasion." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005). The Eleventh Circuit has characterized this burden as "exceedingly light." *See Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1141 (11th Cir. 1983). An employee's violation of company policies or procedures is a legitimate, non-discriminatory reason for an adverse employment action. *See Bogle v. Orange County Bd. of Com'rs*, 162 F.3d 653, 657 (11th Cir. 1998).

Amedisys counseled Dexter and issued her written warnings for her policy violations. Pursuant to the Missed Visit Policy implemented in 2011, Ferguson emphasized limiting scheduling changes to decrease missed patient visits. Although Dexter was aware of this policy and was counseled about rescheduling visits, she continued to frequently reschedule visits. Dexter also repeatedly scheduled weekend visits despite Boyles' counseling in 2010 to limit such visits. Because Dexter repeatedly moved visits, Ferguson limited Dexter to seven visits per day. (Ferguson Depo. at p. 92:18-23). The other counseling and warnings were also based upon Dexter's policy and procedure violations, including her attendance issues and failure to document properly patient care and timely submit paperwork. As such, Amedisys had legitimate, non-discriminatory and non-retaliatory reasons for any alleged adverse action.

> **2.    The undisputed facts raise the inference that age was not a factor in any alleged adverse action.**

The Eleventh Circuit Court of Appeals has held evidence that the same decisionmaker accused of unlawful bias hired or promoted the plaintiff gives rise

to a "permissible inference of non-discrimination." *See Williams v. Vitro Services Corp.,* 144 F.3d 1438, 1443 (11th Cir. 1998); *see also Coughlan v. American Seafoods Co.,* 413 F.3d 1090, 1096 (9th Cir. 2005)("[A]n employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs."); *see also Mitchell v. Data Gen. Corp.,* 12 F.3d 1310, 1318 (4th Cir. 1993)(holding when same decision-maker both hires, promotes and terminates the plaintiff, an inference of nondiscrimination arises).

It is undisputed Ferguson and Boyles made the decision to hire Dexter. Dexter was 43 years of age when she was hired. Ferguson and Boyles issued Dexter the write-ups and the counseling. Ferguson also limited the number of patients per day Dexter could see. Dexter was only two years older when these alleged adverse actions occurred. Ferguson and Boyles' willingness to employ Dexter demonstrates they were not biased against her based upon her age and raises an inference of non-discrimination which Dexter cannot defeat.

### 3. Dexter fails to present substantial evidence Amedisys' legitimate reasons are not worthy of belief.

Dexter has failed to present substantial evidence Amedisys' legitimate, non-discriminatory reasons for the purported adverse actions are a mere pretext for discrimination.   Dexter has two means to establish this:   "(1) by means of affirmative evidence that [age] played an impermissible role in [Amedisys'] decision or (2) by showing that the proffered nondiscriminatory reasons do not

merit credence." *Lincoln v. Bd. of Regents of Univ. Sys. of Georgia*, 697 F.2d 928, 938 (11th Cir. 1983). Dexter cannot establish pretext by either method.

There is no affirmative evidence that Dexter's age played a role in any adverse action.  There is also no evidence to demonstrate Amedisys' reasons are not credible.  Dexter agreed "100 %" with the April 25, 2011, counseling regarding the errors she made in the frequency of visits. (Dexter Depo. at pp. 183:6-185:4). In addition, Dexter does not dispute she continued to move patient visits and schedule weekend visits despite counseling. (Dexter Depo. at p. 200:7-19).  The other LPTAs did not have the same job performance and create the same problems. Dexter has failed to present any evidence of pretext and certainly not substantial evidence of it.

## III.   CONCLUSION

WHEREFORE,  above premises considered, Amedisys respectfully requests this Court grant its Motion for Summary Judgment as to all of Dexter's claims.

Dated:  March 22, 2013.

Respectfully submitted,

s/Wesley C. Redmond
WESLEY C. REDMOND
RACHEL V. BARLOTTA
Attorneys for Defendant

OF COUNSEL:
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 North 20th Street, Suite 1400
Birmingham, AL  35203
(205) 328-0480 (Phone)

## Certificate of Service

I certify that the foregoing has been served upon the following counsel of record by electronic mail or by depositing a copy thereof in the United States mail, properly addressed and postage-prepaid, this March 22, 2013:

Mr. Tim R. Wadsworth
P.O. Box 987
55051 Highway 17
Sulligent, Alabama 35586
wadsworth@centurytel.net

s/Wesley C. Redmond
Of Counsel

31