FILED

2013 Aug-07  PM 12:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

BEVERLY LANE DEXTER,      )
            )
     Plaintiff,        )
            )
vs.             )   6:11-CV-4019-LSC
            )
AMEDISYS HOME HEALTH, INC. )
OF ALABAMA        )
            )
     Defendant.     )

MEMORANDUM OF OPINION

I.    Introduction

In the above-entitled action, Beverly Lane Dexter ("Plaintiff") claims her former employer, Amedisys Home Health, Inc. of Alabama ("Amedisys"), discriminated and retaliated against her for filing complaints based on her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") when it created a hostile work environment and constructively discharged her from her employment. Before the Court is the Motion for Summary Judgment (Doc. 60), filed by Amedisys. The motion has been fully briefed and is now ripe for decision.

II.   Facts[1]

Amedisys is a company that delivers home health care and rehabilitation services to patients. In January of 2009, Plaintiff interviewed with Traci Ferguson ("Ferguson"), and Jeff Boyles ("Boyles"), for a full-time position as a Licenced Physical Therapist Assistant ("LPTA") at the Amedisys branch in Fayette, Alabama. Ferguson was the Director of Operations for the Fayette branch, and Boyles was the Rehabilitation Specialty Director and was responsible for the LPTAs. Ferguson and Boyles offered Plaintiff a job on the day of her interview, and she started her employment the next month. She was forty-three years old at the time. During her

---

[1] The facts set out in this opinion are gleaned from the parties' individual submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

That said, certain of Plaintiff's statements of fact are not accompanied by citations to record excerpts or are accompanied by citations to record excerpts that do not support Plaintiff's assertion of the facts. As to those items, the Court cannot accept counsel's representations of fact and will not independently examine uncited portions of the record in search of support for a particular proposition. *See, e.g., Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (federal courts "are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it"); *Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such self-serving documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment."); Fed.R.Civ.P. 56(c)(1)(A) (litigant on summary judgment asserting that particular facts are or are not disputed "must support the assertion by . . . citing to particular parts of materials in the record"). On summary judgment, a district court "need consider only the cited materials" in the record. Rule 56(c)(3).

employment, the Fayette branch of Amedisys employed two other LPTAs: Raina Elkins ("Elkins") and Anita Janette Robinson ("Robinson").

As an LPTA, Plaintiff provided physical therapy to patients at their homes. To create her patient schedule, Plaintiff first received a calendar every Wednesday from the Business Office Scheduler with all of the patients' names Plaintiff would be visiting the following week and a tentative schedule for providing therapy at their homes. Plaintiff would then rearrange the patient visits to the dates and times of her choosing, and would return the revised schedule to the Business Office Scheduler on or before Friday of that week. LPTAs are paid a 15% premium for weekend visits to patients. To keep costs under control, Saturday visits were allowed "[o]nly as needed." (Boy. Depo. 22:19–21.) Further, after LPTAs made their initial revisions to the calendar, patient visits were to be moved only "as needed, and preferably [for] patient needs." (*Id.* 24:18–19.) Since the beginning of her employment, Plaintiff frequently rescheduled her patient visits.

At the time Plaintiff started working at the Fayette branch, Amedisys matched 75% of the amount an employee put into their 401(k) plan. Subsequently, Amedisys reduced its matched contribution rate from 75% to 37%. (Ferg. Depo. 37:15–19.) This prompted Plaintiff to complain about the 401(k) benefits being reduced. (Pla. Depo.

113:10–114:1.) Plaintiff also complained about mileage reimbursements not increasing even though the price of gasoline was increasing (*id.* 120:6–121:4), and the lack of merit increases. (*Id.* 123:10–124:1.)

In late 2010 or the early part of 2011 Amy Moye ("Moye") became the Business Office Scheduler. She advised the LPTAs that she would not make any unnecessary changes to their patient schedules after they made their initial revisions. On two separate occasions when Plaintiff attempted to change her schedule after her initial revisions, Moye said "it may be hard, but I can teach an old dog new tricks." (Pla. Depo. 91:11–92:13.) Plaintiff mentioned Moye's "old dog" comments to Boyles when she was discussing her frustration with the changes that had taken place since Moye became the scheduler. Boyles told Plaintiff to "take it with a grain of salt," and "you know how these young whippersnappers are." (*Id.* 93:1–17.)

Effective February 1, 2011, Amedisys adopted a "Zero Missed Visit" policy that required its branches to ensure visits were not missed and that missed visits were properly documented and made up the same week. (Ferg. Decl., ¶ 9.) Pursuant to this policy, Ferguson placed a renewed emphasis on patients being seen when scheduled. (*Id.*) Plaintiff was unaware of this new policy. Additionally, Ferguson and Moye occasionally said that the office needed "new blood" during employee conferences.

(Pla. Depo. 73:2–16.) This phrase was used in reference to new patients and employees. (*Id.* 74:1–23.)[2] On one occasion Plaintiff informed Boyles that she didn't think she was being treated fairly by Ferguson. (Boy. Depo. 57:13–58:25.) However, she never indicated why she felt like she was being singled out. (*Id.* 59:3–5.) Boyles told Plaintiff, "don't worry about it." (Pla. Depo. 72:18–22.)

Around the same time that Amedysis adopted the "Zero Missed Visit" policy, Boyles counseled Plaintiff to reduce her number of Saturday visits. Despite this, Plaintiff moved eight visits to Saturday, April 23, 2011. On April 27, 2011, Boyles issued a counseling form to Plaintiff because her "level of frustration with [the] office staff [was] increasing." (Doc. 62-3 at 9.) According to Darlene Pinion, one of the office staff employees, Plaintiff "was hostile to her, [and] became aggravated with her and confrontational when [she] couldn't do the things [Plaintiff] wanted done." (Ferg. Depo. 79:17–20.) Moye made similar accusations about Plaintiff. (*Id.* 79:25–80:4.) Boyles counseled Plaintiff to keep her frustration level with the office staff in check and to work on her perception of the comments they made.

According to her daily activity sheets, Plaintiff continued to reschedule patient visits after her initial revisions to the calendar, and continued to move visits to

---

[2]Angie Johnson, a Business Office Manager, also used the phrase, but only in reference to new patients. (Pla. Depo. 76:4–7.)

weekends. (Ferg. Decl., ¶¶ 24, 27.) She moved eight patients to Saturday, April 30, 2011, and three patients to Sunday, May 1, 2011. The next weekend she moved one patient to Saturday, May 7, 2011, and three patients to Sunday, May 8, 2011. The following week, she rescheduled four patients on Monday, May 9, 2011, and three patients on Tuesday, May 10, 2011. (*Id.*) Plaintiff planned on taking time off from work on Thursday, May 12, 2011, and Friday, May 13, 2011. She was instructed to turn in all paperwork for her missed visits before taking time off, but never did. She still took those days off.

The following week, Plaintiff rescheduled five patients on Monday, May 16, 2011, three patients on Tuesday, May 17, 2011, and one patient on Wednesday, May 18, 2011. Later that day, Boyles counseled Plaintiff about moving patients. (*Id.*, ¶ 19.) Despite this, Plaintiff rescheduled two patients on Thursday, May 19, 2011, and two patients on Friday, May 20, 2011. That weekend, she moved one patient to Saturday, May 21, 2011, and two patients to Sunday, May 22, 2011.  The next week she rescheduled three patients on Monday, May 23, 2011.

Ferguson met with Plaintiff on May 23, 2011, regarding her rescheduling of patient visits. She provided Plaintiff with a written warning for continuing to move patients, accruing an unplanned absence and three tardies, and failing to turn in her

missed visit notes by the requested date. During their counseling session, Ferguson

provided Dexter with an plan for improvement ("Action Plan") which provided:

> The following actions are required to aid you in improving your
> performance in an effort to meet the minimum and expected
> performance requirements. . . .
> No further callins or tardies in [the second] quarter. Paperwork is due
> daily by 10 am or visits for that day can not be made until[] all paper work
> is here. Visits can not be moved to the weekend unless [Ferguson]
> approves. [Plaintiff] will call in and out daily to [Boyles] and he will make
> schedule changes. No more than [seven] visits can be made in a day and
> each visit must be [forty-five] minutes or longer in length. There will be
> no further excessive moving of visits.
> If there is any infraction in the above action plan for [Plaintiff] it could
> lead to termination . . . .

(Doc. 62-3 at 10.)

Despite Ferguson's written warning and implementation of the Action Plan,

Plaintiff continued to move patient visits. (Ferg. Decl., ¶ 27.) According to Plaintiff's

daily activity sheets, she rescheduled one patient on Tuesday, May 24, 2011, two

patients on Wednesday, May 25, 2011, three patients on Thursday, May 26, 2011, and

two patients on Friday, May 27, 2011. (*Id.*) Ferguson issued Plaintiff another written

warning on May 27, 2011, because Plaintiff failed to use the agency assigned weights

with her patients, failed to properly document her patient care, and continued to

reschedule patients. (Doc. 62-3 at 12.) Daniel Miles ("Miles"), a young male between

20 and 30 years old, was being interviewed for an LPTA position around the same time

that Plaintiff was being written up. (*Id.* 70:16–18.) After being written up, Plaintiff submitted a letter of resignation. (Doc. 62-3 at 13.) She was forty-five years old at the time.

Following Plaintiff's resignation, Miles assumed Plaintiff's LPTA duties as a full-time employee (Boy. Depo. 18:10–12), and he became eligible for full benefits. (Ferg. Depo. 98:2–10.) He was originally intended to be hired at PRN status, performing LPTA duties as needed. Had he been hired PRN, he would not be eligible for health insurance, life insurance, vision insurance, dental insurance, or 401(k) benefits. (*Id.* 34:22–35:19.)

After her resignation, Plaintiff filed an EEOC charge. On November 28, 2011, she filed the current action, and on August 3, 2012, she amended her complaint, alleging discrimination in violation of the ADEA based on a hostile work environment, wrongful termination, and other adverse terms and conditions of her employment, and retaliation in violation of the ADEA based on her wrongful termination for complaining about the hostile work environment and other adverse terms and conditions of her employment. (Doc. 28-1.)

III.    Standard

Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party moving for summary judgment " always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) " requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the ' depositions, answers to interrogatories, and admissions on file,' designate ' specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)).  " A factual dispute is genuine only if a ' reasonable jury could return a verdict for the

nonmoving party.' " *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224

(11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428,

1437 (11th Cir. 1991)).

IV.    Discussion

    A.    Hostile Work Environment

    Plaintiff alleges that she endured a hostile work environment in violation of the

ADEA. Amedisys argues that the ADEA does not provide for a claim of hostile work

environment. *See U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d

1244, 1249 n.7 (11th Cir. 1997) ("Neither party questions, hence we do not actually

decide, whether the hostile environment doctrine developed in Title VII actions

applies in an ADEA action, a question so far decided specifically by only one circuit

court of appeals, the Sixth.") Even assuming, *arguendo*, that a hostile work

environment claim is cognizable under the ADEA, Plaintiff cannot show that the

elements of such a claim have been met.

    In order to prove that an employer is liable for a hostile work environment

Plaintiff must show that:

> (1) [s]he belongs to a protected group; (2) [s]he was subjected to
> unwelcome harassment; (3) the harassment was based on [her]
> membership in the protected group; (4) it was severe or pervasive
> enough to alter the terms and conditions of employment and create a

hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quotation marks omitted). Additionally, "[o]nly conduct that is 'based on' a protected category, such as [age], may be considered in a hostile work environment analysis." *Id.* (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000)). "Innocuous statements or conduct, or boorish ones that do not relate to the [age] of the actor or of the offended party (the plaintiff), are not counted." *Id.* (citation omitted).

Plaintiff claims she was harassed by Moye's "old dog" comments, Ferguson and Moye's use of the phrase "new blood" during group conferences, Boyles' failure to act when Plaintiff informed him of these comments, the two write-ups by Ferguson, Ferguson's implementation of the Action Plan that no other employee had to follow, and Miles' interview.

First, there is nothing in the phrase "new blood," by itself, that refers to age. If anything, it is a "profoundly ambiguous" remark that is "much too innocuous to transform routine managerial decisions into something more invidious." *Surez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 56 (1st Cir. 2000) (examining whether reference to "new blood," along with other comments, created an environment so abusive as to

support a constructive discharge in an ADEA discrimination claim). Plaintiff admits that the phrase was used in reference to " new patients" and " new employees." (Pla. Depo. 74:1–10.) Indeed, Moye used the phrase in reference to herself as a new employee taking over the scheduler position (*Id.* 76:8–18), and Plaintiff could not describe how Ferguson used the phrase in a sentence, only noting that she used it in reference to new patients and new employees. (*Id.* 73:17–74:13.) This is in stark contrast to a situation where Ferguson might have said that she " was 'going to get these old folks out of here and bring in some new blood.'" *Morrison v. City of Bainbridge, GA*, 432 Fed. Appx. 877, 880 (11th Cir. 2011) (noting that one could infer a coworker harbored an animus toward older workers by such a statement). The phrase, then, related to the need for new—not necessarily younger—employees. Accordingly, the Court will not consider it in determining whether Plaintiff endured a hostile work environment.

Second, the write-ups, Action Plan, and Miles' interview were not implemented based on Plaintiff's age because the actions are inherently neutral, and Plaintiff has presented no evidence from which a reasonable jury could infer that Ferguson—the decisionmaker—harbored an animus towards older employees. Thus, the Court will not consider these actions in determining whether Plaintiff endured a hostile work

environment.

Third, the remaining conduct was not severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and create a hostile or abusive working environment. This determination includes both a subjective and objective component. *Jones*, 683 F.3d at 1299. "The burden is on [P]laintiff to demonstrate that [s]he perceived, and that a reasonable person would perceive, the working environment to be hostile or abusive." *Id.* At summary judgment, the Court must accept that Plaintiff subjectively perceived that the harassment rose to this level. *Id.*

In determining whether a reasonable person would perceive the working environment to be hostile or abusive, a court must look at the totality of circumstances and consider, *inter alia*: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). Conduct is objectively severe when the workplace is permeated with intimidation, ridicule, and insult. *Id.* at 1276–77. The Supreme Court has repeatedly emphasized that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and

conditions of employment. *See, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *Harris*, 510 U.S. at 21–22.[3]

The frequency of the alleged harassment was not high. Moye used the phrase "old dog" twice (Pla. Depo. 91:11–15), and Plaintiff informed Boyles about Moye's "old dog" comments once. This occurred over a five month period between early 2011 and late May of 2011. The Eleventh Circuit considers an incident a week to be sufficiently frequent to bolster a plaintiff's case but considers an incident every two months to be insufficiently frequent to do so. *Compare Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (fifteen instances in four months "was not infrequent") *with Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1249 (11th Cir. 1999) (en banc) (five inappropriate instances in eleven months were "far too infrequent" to support a sexual harassment claim) and *Gupta*, 212 F.3d at 579, 584–85 (eight instances of touching, partial exposure, staring and complimenting in six or seven months, plus repeated invitations to lunch during the same period, was not frequent). Since the frequency in *Gupta* exceeded one incident a month, the frequency

---

[3]For example, the Eleventh Circuit has found that a female plaintiff was not subjected to a sex-based hostile work environment where a male supervisor (1) told her he was "getting fired up," (2) rubbed his hip against her hip while smiling and touching her shoulder, (3) twice made a sniffing sound while looking at employee's groin area, and (4) constantly followed her and stared at her in a very obvious manner. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999), *cert. denied*, 529 U.S. 1068 (2000).

of conduct in this case does not support Plaintiff's claim.

Additionally, even assuming the conduct and statements alleged by Plaintiff are rude, disrespectful, or unprofessional, they do not create an environment "permeated with discriminatory intimidation, ridicule, and insult" as required to establish objectively severe conduct. Moye's "old dog" comments occurred only in the context of the colloquial phrase "it's hard to teach an old dog new tricks." (Pla. Depo. 91:11–15.) Specifically, Plaintiff was informing Moye that it was difficult for her to avoid changing her schedule after her initial revisions were turned in, and Moye said "it may be hard, but I can teach an old dog new tricks." (*Id.* 91:22–92:8.) At most, Moye's comments only amount to simple teasing. Moreover, Boyles' advice to "take [Moye's comments] with a grain of salt," and "you know how these young whippersnappers are" is not objectively severe. (*Id.* 93:1–17.) Moreover, none these comments are physically threatening or humiliating, and there is no evidence that the conduct unreasonably interfered with the Plaintiff's job performance.

Accordingly, the Court has considered the effect of these acts on the working environment, "in context, not as isolated acts," *Mendoza*, 195 F.3d at 1246, and finds that, in their totality, the alleged incidents do not satisfy the Eleventh Circuit's "baseline" for severity or pervasiveness that is required to survive summary judgment.

*Id.* at 1244. Thus, Plaintiff's hostile work environment claim is due to be dismissed.

B.     Discrimination and Retaliation

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA also forbids retaliation. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). In order to be protected under the ADEA, the employee must be at least 40 years of age. *Id.* § 631(a). "A plaintiff can establish age discrimination [and retaliation] through either direct or circumstantial evidence." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013).

1.     Direct Evidence

Plaintiff argues that "direct evidence of the discrimination and retaliation is bountiful." (Doc. 65 at 30.) The Eleventh Circuit has held that:

> This Court defines direct evidence of discrimination as evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee. Direct evidence is evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption. As our precedent illustrates, only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination. If the alleged statement suggests, but does

not prove, a discriminatory motive, then it is circumstantial evidence."

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (citations and internal quotation marks omitted). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Plaintiff first contends that she was called an "old dog" on several occasions, and this is direct evidence of age discrimination and retaliation. (Doc. 65 at 29.) However, this comment was made by Moye, who was not a decisionmaker (Pla. Depo. 92:18–20), and her comment was not related to the decisionmaking process. (*Id.* 91:19–92:13.) Plaintiff argues that direct evidence may be found under the "cat's paw" theory. "This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). However, Plaintiff does not explain how this theory applies in this case. There is no evidence that Ferguson or Boyles failed to independently investigate any complaints by Moye against Plaintiff, or that Moye's complaints were

even related to the two write-ups and the Action Plan.

Next, Plaintiff contends that management stated they needed "new blood," and that this is direct evidence of age discrimination. (Doc. 65 at 29.) However, as previously noted, the phrase "new blood," is "profoundly ambiguous" and is "much too innocuous to transform routine managerial decisions into something more invidious." *Surez*, 229 F.3d at 56. Moreover, Plaintiff admits that the phrase was used in reference to "new patients" and "new employees," not necessarily younger employees. (Pla. Depo. 74:1–10.) Further, the phrase was only spoken during group conferences, and was not directed at Plaintiff. Thus, it is not direct evidence of discrimination or retaliation.

Finally, Plaintiff contends that the following incidents are direct evidence of discrimination and retaliation: (1) Dexter was replaced by a younger individual after she complained, (2) her patients were cut, (3) her job was posted before she was written up, and (4) her replacement was less qualified than she was. Even if these incidents are believed to be true, they are not related to the decisionmaking process, and only *suggest* that Plaintiff was constructively discharged because of her age. As such, they are circumstantial evidence of age discrimination and retaliation.

    2.    Circumstantial Evidence

In cases where the only evidence of discrimination and retaliation is circumstantial, the court must "analyze the claim under the *McDonnell Douglas* framework, which requires the plaintiff to create an inference of discrimination [or retaliation] through her *prima facie* case." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *Hairston*, 9 F.3d at 919 (the burden of proof in ADEA retaliation cases is governed by the *Mcdonnell-Douglas* framework). *See also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004).[4] Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

      i.    *Prima Facie* Case of Discrimination Under the ADEA

---

[4]In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Supreme Court held that the language "because of" in the ADEA statute means that a plaintiff must prove that discrimination was the "but-for" cause of the adverse employment action. *See id.* at 176. The Eleventh Circuit recently determined that evaluation of ADEA claims based on circumstantial evidence under the *McDonnell Douglas* framework is consistent with the Supreme Court's decision in *Gross. Sims*, 704 F.3d at 1332–33 (finding the *McDonnell Douglas* framework consistent with *Gross* because the burden of production shifts to the defendant, but the burden of persuasion remains at all times with the plaintiff); *Gross*, 557 U.S. at 175 n.2 ("[T]he Court has not definitively decided whether the evidentiary framework of [ *McDonnell Douglas*] utilized in Title VII cases is appropriate in the ADEA context.").

Plaintiff claims that she was discriminated against based on her age. " In order to make out a *prima facie* case for an ADEA violation, the plaintiff must show that [s]he (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual." *Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1444 (11th Cir. 1998) (emphasis added). It is undisputed that Plaintiff was above the age of 40 at all relevant times (Doc. 61 at 5, ¶ 7), and was qualified to do her job. (Doc. 65 at 11, ¶ 10.) Further, Plaintiff has presented sufficient evidence demonstrating that she was replaced by Miles, a younger individual. (Boy. Depo. 38:24–39:1.) Thus, the only question is whether she was subject to an adverse employment action.

Plaintiff contends that she was constructively discharged.[5] The Eleventh Circuit has " recognized that constructive discharge can qualify as an adverse employment decision under the ADEA." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1230 (11th Cir. 2001), *modified on other grounds*, *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007). However, the threshold for a constructive discharge claim is higher than that for a hostile work environment claim. *Id.* at 1231. A plaintiff claiming constructive discharge must show that working conditions were " so intolerable that a reasonable

---

[5]Although her complaint alleges discrimination in violation of the ADEA based on other adverse terms and conditions of her employment, Plaintiff does not argue that she suffered any adverse employment action other than constructive discharge.

person in [her] position would have been compelled to resign." *Griffin GTE Florida, Inc.*, 182 F.3d 1279, 1283 (11th Cir. 1999).

Here, because Plaintiff has failed to establish the existence of a hostile work environment, she cannot as a matter of law establish that a constructive discharge occurred. *See Hipp*, 252 F.3d at 1231 (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992) (" To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness than the minimum requirement to prove a hostile working environment" )); *Barrow v. Ga. Pacific Corp.*, 144 Fed. Appx. 54, 59 (11th Cir. 2005) (The plaintiff " failed to meet even the standard for a hostile work environment. She cannot, therefore, meet the higher standard for constructive discharge." ). Accordingly, Plaintiff cannot establish that she was constructively discharged.

   ii. *Prima Facie* Case of Retaliation Under the ADEA

Plaintiff alleges that she was retaliated against for making complaints of age-based discrimination. In order to make out a *prima facie* case of discriminatory retaliation, Plaintiff " must present evidence that: (1) [s]he engaged in statutorily protected conduct; (2) [s]he was adversely affected by an employment decision; and (3) there was a causal connection between the statutorily protected conduct and the adverse employment decision." *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006).

In demonstrating that she was adversely affected by an employment decision for purposes of retaliation, Plaintiff " must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). In speaking of material adversity, the Supreme Court felt it " important to separate significant from trivial harms." *Id.* The Court went on to stress that the exercise of protected activity does not " immunize [an] employee from those petty slights or minor annoyances that often take place at work that all employees experience." *Id.*

Here, Plaintiff cannot show that a majority of Amedisys' actions would have dissuaded a reasonable worker from making or supporting a charge of discrimination based on age. In assessing an employment decision, *Burlington* emphasizes that " [c]ontext matters" and that " the significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington*, 548 U.S. at 69. Moye's " old dog" comments, Ferguson and Moye's use of the phrase " new blood" during group conferences, Boyles' failure to act when Plaintiff informed him of these comments, the two write-ups by Ferguson, and Miles' interview were all trivial harms, and do not rise

to the level of a materially adverse employment action.

However, the Action Plan may be considered materially adverse in light of Plaintiff's circumstances. (Pla. Depo. 78:18–79:2) (Plaintiff " took the job based on flexibility [and moved her] family there for that job"). *See Burlington*, 548 U.S. at 69 (" [a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children"); *Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008) (noting that *Burlington Northern* " strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions").

Regardless of whether Plaintiff suffered a materially adverse employment action, she cannot demonstrate a causal connection between the Action Plan and any of her protected activity.[6] The Eleventh Circuit has described the causal connection requirement as follows:

> We construe the causal link element broadly so that " a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). " A plaintiff satisfies this element if [s]he provides

---

[6]Plaintiff argues that the following activities are protected by the ADEA: (1) her complaint to Ferguson about mileage reimbursement, merit increases, and changes to the 401(k) benefit plan; (2) her complaint to Boyles about Moye's "old dog" comments; (3) her complaint to Boyles that she was not being treated fairly by Ferguson; and (4) her EEOC charge.

sufficient evidence" of knowledge of the protected expression and "that there was a close temporal proximity between this awareness and the adverse . . . action." [*Shotz v. City of Plantation, Fla.*, 344 F.3d 1180 n.3 (11th Cir. 2003)] (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)). A "close temporal proximity" between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case. *See Olmsted*, 141 F.3d at 1460. We have held that a period as much as one month between the protected expression and the adverse action is not too protracted. *See* [*Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998)] (citing *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986)).

The Supreme Court has stated that "mere temporal proximity between . . . knowledge of protected activity and an adverse . . . action . . . must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (citations omitted). The Court cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection. *See id.* (citing *Richmond v. ONEOK*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)). If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law. In *Wascura v. City of South Miami*, we held that "Wascura failed to present evidence from which a reasonable jury could find any causal connection between Wascura's notice to the Commissioners in January 1995 of her potential need to take time off to care for her son and her subsequent termination on May 16, 1995." 257 F.3d 1238, 1248 (11th Cir. 2001)

*Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2011).

Plaintiff has presented no evidence that Ferguson harbored an animus against older employees, or a retaliatory animus against Plaintiff. Nor has she presented any

evidence that her complaints to Ferguson and Boyles occurred within a close temporal proximity such that a causal connection could be inferred. Moreover, there is no evidence that Ferguson knew about Plaintiff's complaints to Boyles. Finally, Plaintiff's EEOC charge was filed after Plaintiff resigned; therefore Ferguson could not have known about it when she implemented the Action Plan. Accordingly, Plaintiff cannot establish a *prima facie* case of retaliation.

   iii. Legitimate, Non-Discriminatory Reason

 Assuming, *arguendo*, that Plaintiff can meet her burden of demonstrating a *prima facie* case, the burden would then shift to Amedisys to articulate a legitimate, non-discriminatory, and non-retaliatory reason for constructively discharging Plaintiff. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253. Amedisys contends:

> [it] counseled [Plaintiff] and issued her written warnings for her policy violations. Pursuant to the Missed Visit Policy implemented in 2011, Ferguson emphasized limiting scheduling changes to decrease missed patient visits. Although [Plaintiff] was aware of this policy and was counseled about rescheduling visits, she continued to frequently reschedule visits. [Plaintiff] also repeatedly scheduled weekend visits despite Boyles' counseling in 2010 to limit such visits. Because [Plaintiff] repeatedly moved visits, Ferguson limited [her] to seven visits per day. The other counseling and warnings were also based upon [Plaintiff's] policy and procedure violations, including her attendence issues and failure to document properly patient care and timely submit paperwork.

(Doc. 61 at 31.) Accordingly, Amedisys has articulated a legitimate, non-

discriminatory, and non-retaliatory reason for terminating Plaintiff, and Plaintiff must now show that the proffered reason was pretextual. *Hicks*, 509 U.S. at 511.

### iv.    Pretext

To establish pretext, Plaintiff must " demonstrate that the proffered reason was not the true reason for the employment decision." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).  " A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation marks and citation omitted). Plaintiff can meet her burden " either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

### a.    Demonstrating Pretext Directly

Viewing the evidence in the light most favorable to Plaintiff as the non-moving party, she cannot show that a discriminatory or retaliatory reason more likely motivated Ferguson—the supervisor that implemented the Action Plan—than Amedisys' proffered reason. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) (When determining whether an employer's proffered reason was pretextual, it is the

motive of the decisionmaker that is at issue). Plaintiff has not presented sufficient evidence from which a jury could infer that Ferguson harbored a discriminatory animus towards older employees, or a retaliatory animus towards Plaintiff.

### b.    Demonstrating Pretext Indirectly

To discredit Amedisys' explanation, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Amedisys'] proffered legitimate reasons for [her constructive discharge] that a reasonable factfinder could find all of those reasons unworthy of credence." *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998) (quotation marks, citation, and alteration omitted). Plaintiff cannot show that Amedisys' proffered reasons are unworthy of credence. It is clear from the evidence that the write-ups and Action Plan were warranted. Plaintiff excessively rescheduled patient visits (Ferg. Decl., ¶ 27), and moved patients to the weekend (*Id.*, ¶ 24), even after she was counseled against doing so. (*Id.*, ¶ 19.) Plaintiff contends that rescheduling patient visits and moving patients to the weekend was allowed; however, it was allowed only "as needed, and preferably [for] patient needs." (Boy. Depo. 24:18–19.) In light of the counseling she received from Boyles for rescheduling patients and moving patients to the weekend, Plaintiff should have been aware that excessive rescheduling and weekend visits were no longer

allowed.

Additionally, Plaintiff failed to turn in her paperwork (Ferg. Decl., ¶ 33), often failed to call the scheduler to report her visits (Boy. Depo. 68:5–70:21), and had 88 missed visits. (Ferg. Decl., ¶ 29.) In fact, Boyles observed that Plaintiff had missed visits "just about every week." (Boy. Depo. 63:4–64:18.) These are clear violations of the Employee Handbook that could warrant the write-ups and Action Plan.[7]

Plaintiff was tardy often during her employment. (Boy. Depo. 67:3–20; 72:4–8.) Plaintiff contends that there is no written tardy policy. However, the Employee Handbook provides that "more than one (1) incident of tardiness in a week, or more than three (3) incidents of tardiness in a quarter is considered excessive." (Doc. 62-5 at 37.) Moreover, Boyles and Ferguson testified that the LPTAs typically came in at 8 a.m., and an LPTA would be considered tardy if she called in the Morning and said that she would not be able to see her visits that day (Boy. Depo. 66:24–67:7), or if she called in and said that she wouldn't be coming in until 11:00 a.m. (Ferg. Depo. 72:19–24.) Regardless of whether the term "tardy" was defined in the Employee Handbook, there was certainly a written tardy policy, and the fact that Plaintiff was written up for violating it is not evidence of pretext.

---

[7]The Employee Handbook specifically states that an employee may receive a written warning for "[e]xcessive tardiness or absenteeism" and "[a]bsence without proper notification," and the warning shall "specify the improvement that is expected." (Doc. 62-5 at 35–36.)

Plaintiff contends that Boyles would not have given Plaintiff the written warnings. However, Boyles only stated that he would not have done so because he thought Plaintiff needed more time to deal with the verbal warning he had given her five days earlier. (Boy. Depo. 54:2–9.) This does not demonstrate that the write-ups were unwarranted, only that Boyles would have waited longer before giving Plaintiff a written warning.

Finally, Plaintiff argues that no other employee was required to follow the Action Plan. However, none of the other employees committed the same transgressions as Plaintiff. Robinson had 18 missed visits and Elkins had 20 missed visits, as opposed to Plaintiff's 88 missed visits. (Id., ¶ 29.) While Plaintiff missed visits "just about every week," Elkins and Robinson missed visits "very infrequently." (Boy. Depo. 63:4–64:18.) Elkins and Robinson never saw patients on Saturday or Sunday, unlike Plaintiff. (Ferg. Decl., ¶ 25.) Plaintiff often failed to call the scheduler to report her visits, whereas Elkins and Robinson rarely failed to call the scheduler. (Id. 68:5–70:21.) Plaintiff was tardy often during her employment (Id. 67:3–20; 72:4–8), but Elkins and Robinson never had three tardies in a quarter to Ferguson and Boyles' knowledge. (Ferg. Decl., ¶ 33; Boy. Depo. 66:12–67:7.) Plaintiff failed to turn in required paperwork as requested before being off from work, whereas Robinson and

Elkins never failed to do so. (Ferg. Decl., ¶ 33.) Although Elkins and Robinson were not required to call Boyles in the morning, they were required to call Moye to go over which patients they would be visiting that day. (Ferg. Depo. 56:9–57:12.)

In light of Plaintiff's own conduct leading up to her resignation, it is clear that Amedisys' proffered reasons for implementing the Action Plan and write-ups are worthy of credence. Accordingly, even if Plaintiff could establish a *prima facie* case, she cannot show that Amedisys' proffered reasons for constructively terminating her were pretextual.

V.   Conclusion

For the aforementioned reasons, Amedisys' Motion for Summary Judgment is due to be GRANTED. A separate order consistent with this opinion will be entered.

Done this 7th day of August 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032